# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OLGA IBARRA, ) ) Plaintiff, ) ) v. ) ) COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) ) Defendant. ) | Case No. CIV-16-1420-SM |

## MEMORANDUM OPINION AND ORDER

Olga Ibarra (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Doc. 17.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned affirms the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B.   **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

C.   **Relevant findings.**

1.   **Administrative Law Judge (ALJ) findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant

2

time period. AR 20-26;[1] *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) was severely impaired by first, rheumatoid arthritis, second, by degenerative disc disease, third, by sciatica, fourth, by osteoarthritis, and fifth, by status post two right shoulder surgeries, March 2012 right knee surgery, and September 2014 right hip surgery;

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(2) had the residual functional capacity[2] (RFC) for light work except that Plaintiff can only:

   a. occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl,
   b. never climb ropes, ladders or scaffolds,
   c. occasionally work overhead,
   d. as to the use of her upper extremities below overhead level, frequently, but not constantly, reach, handle, finger, and feel,
   e. frequently, but not constantly, use her lower extremities to operate foot pedals and controls,
   f. must avoid exposure to vibration, and
   g. must avoid exposure to workplace hazards, such as dangerous moving machinery and unprotected heights;

(3) was able to perform certain past relevant work; and so,

---

[1] For the parties' briefs, the undersigned's page citations refer to this Court's CM/ECF pagination. Page citations to the AR refer to that record's original pagination.

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(4) had not been under a disability as defined by the Social Security Act since June 6, 2011 through the date of the ALJ's decision, April 20, 2015.

AR 15-27.

### 2. Appeals Council action.

The Social Security Administration's Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

**B. Issue for judicial review.**

Plaintiff contends "[t]he [ALJ] failed to consider [Plaintiff's] subjective statements under the correct legal standards." Doc. 16, at 9.

**C. Analysis.**

Plaintiff begins her challenge to the legal sufficiency of the ALJ's evaluation of her credibility by noting what an ALJ is required by law and regulation to consider, evaluate, weigh, link, and document in making a credibility determination. *Id.* at 10-13. Plaintiff asserts the ALJ "failed to evaluate [Plaintiff's] subjective statements under the correct legal standards:" maintaining his analysis was merely "(1) a summary of [Plaintiff's] subjective statements, (2) a summarization of the medical record, and (3) a series of four conclusory boilerplate statements." *Id.* at 13 (record citations omitted).

"[An] ALJ's credibility findings warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). "Credibility determinations are the province of the factfinder, and [a court] will not upset them" when "supported by substantial evidence." *Lykins v. Colvin*, 657 F. App'x 726, 728 (10th Cir. 2016) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)). But such "credibility findings 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Wilson*, 602 F.3d at 1144). Furthermore, the ALJ cannot ignore

5

evidence favorable to the plaintiff. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002). Those factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Wilson*, 602 F.3d at 1145 (quotation omitted).

First, Plaintiff argues the ALJ's summary, "standing alone," "without an explanation how the ALJ applied the factors to the subjective statements and medical records is inadequate . . . ." Doc. 16, at 13. Second, she attacks the use of disfavored boilerplate. *Id.* at 15. She maintains that "a lack of support from the objective medical evidence cannot be the sole reason for rejecting [her] subjective statements." *Id.*

It is error for the ALJ to use standard boilerplate language that fails to set forth the "specific evidence" the ALJ considered in determining that a claimant's complaints were not credible. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, when an ALJ's credibility determination does not rest on mere boilerplate language, but is linked to specific findings of fact fairly derived from the record, it will be affirmed by the court. *White v. Barnhart,* 287 F.3d 903, 909-10 (10th. Cir. 2000). Here, the ALJ linked his credibility analysis to specific findings of fact. The ALJ noted Plaintiff "obtains medical care and takes medication for her impairments," and reviewed her prescriptions. AR 24. He reviewed Plaintiff's medical history, surgeries, and medical contacts since 2011. *Id.* at 20-24. He reviewed Plaintiff's daily activities. *Id.* at 20. And he considered the "consistency . . . of nonmedical testimony with objective medical evidence." *Wilson*, 602 F.3d at 1145; *see* AR 21-24.

Though the ALJ used boilerplate language in spots,[3] he linked his analysis to specific findings of fact. He noted Plaintiff's late 2011 assessment with "cervical and lumbar degenerative disc disease." AR 21. The MRI

---

[3] *See e.g.*, AR 25 ("After careful consideration of the evidence, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.").

7

confirmed she "does have a very small amount of stenosis, . . . this appears to be mild to moderate," and Dr. Michael D. Martin found "full strength in all extremities," "normal gait and station," and "mild decreased sensation in the right lower extremity." *Id*. (quoting *id*. at 549). The ALJ noted objective medical evidence supports Plaintiff's allegations of pain and discomfort, but in December 2011, she was standing for prolonged periods and exercising regularly, walking one to two miles a day. *Id*. And, the ALJ noted her October 2011 echocardiogram produced results inconsistent with her complaints of angina and dyspnea with exertion. *Id*.; *see id*. at 672.

The ALJ noted Plaintiff's complaints of pain, which the objective medical evidence appeared to discount. For example, in January 2013, Plaintiff complained of burning and tingling in in her lower extremities. *Id*. at 22. An April 2013 MRI "revealed findings similar to those in 2011," with "no evidence of a disc herniation, central canal stenosis, or neutral foraminal stenosis within the lumbar spine." *Id*. And in July 2013, she "complained of hand pain, but electromyography revealed results within normal limits." *Id*.; *see id*. at 827. The ALJ supplemented his boilerplate statements with "specific evidence," providing the thorough analysis needed to support his credibility determination. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

8

Plaintiff identifies no specific postural limitation that, in her view, the ALJ should have imposed, given the record before him. Correspondingly, she does not address—or acknowledge—the postural limitations the ALJ did include in the RFC. AR 18. Likewise, Plaintiff ignores the significant restriction the ALJ imposed due to the effects of her severe physical impairments: a limitation to light work. *Id.*

Similarly, Plaintiff's attack on the ALJ's reliance on her activities of daily living fails. In attacking the ALJ's "mention[ing of her] daily activities of caring for her mother and her household," she insists "it is improper for an ALJ to rely on daily activities to reject a claimant's subjective complaints." Doc. 16, at 16.

The ALJ made more than a "passing reference" to Plaintiff's daily activities:

> Ms. Ibarra acknowledged she drives every day to take her daughter to school and pick her up after school, as well as to shop, but testified she drove more two years ago. The claimant went with her daughter to Mexico in March 2014, with her daughter driving the camper, to see the claimant's ill brother. Ms. Ibarra testified she lied down during the trip on a bed in a camper. She notes she spends time cleaning, doing laundry, washing dishes occasionally, taking out the trash, making meals daily, shopping for grocery weekly, managing her finances, watching TV, reading, visiting with her older daughter, visiting with others who come to her home, talking on the telephone, going out to eat, and attending church twice a month, although the claimant previously reported going to church daily. She acknowledged she was walking two miles at a time two years

9

> ago, but testified she stopped doing that about one or one and one-half years ago. She acknowledged that two years earlier, she could sit and stand for longer periods than she can today. The claimant takes care of her own finances. She uses Facebook once or twice a week, but denied using a computer. The claimant subsequently testified she uses her daughter's Internet service.

AR 20; *see* Doc. 16, at 16. And the ALJ was not referring to merely "sporadic instances" of activities, as Plaintiff posits. Doc. 16, at 16.

> The claimant's acknowledgement of significant daily activities, including taking care of her Mother and her household, the improvement in some of her symptoms with treatment and medication, and examinations showing functional and adequate findings to work, and the fact none of her treating physicians opine she cannot work all weaken the credibility of the claimant's allegations. The claimant does experience some limitations but only to the extent accounted for in the residual functional capacity above.

AR 26.

The ALJ did not rely on Plaintiff's activities of daily living as the sole basis for finding Plaintiff not fully credible. Instead, he used them as one part of his adverse credibility finding, as the Commissioner's regulations require and binding case law recognizes. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ may consider a Plaintiff's daily activities as part of credibility evaluation); *Wilson*, 602 F.3d at 1146 (considering ALJ's reliance on Plaintiff's daily activities as permissible part of substantial evidence supporting credibility evaluation); *Thomas v. Berryhill*, No. 16-1353, --- F. App'x ---, 2017 WL 1359827, at *2 (10th Cir. Apr. 13, 2017) ("Although

10

the record also contains evidence that [Plaintiff's] daily activities are more limited, the ALJ is in the best position to resolve such conflicts in the evidence . . . ."). The ALJ was entitled to base her adverse credibility finding, in part, on his performance of these activities. The ALJ properly considered the relevant factors and specifically set forth record evidence relied upon in making his credibility determination. *See Qualls*, 206 F.3d at 1372.

Finally, Plaintiff contends the above errors tainted the RFC. Doc. 16, at 17-18. She points to no objective evidence, medical or otherwise, for support. She does not challenge the ALJ's evaluation of the opinion evidence, where he gave "great weight" to the State agency physicians' opinions "as set forth in their [RFCs]." AR 25. Having found substantial evidence supporting the ALJ's credibility determination, Plaintiff's argument that the ALJ's "flawed [credibility] evaluation" undermines the ALJ's RFC also fails. Doc. 16, at 16.

Plaintiff has failed to establish reversible error. Here, the ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations of *disabling* pain and other limitations were not entirely credible. "[H]is approach performed the essential function of a credibility analysis by indicating to what extent he credited what [Plaintiff] said when determining the limiting effect of [Plaintiff's] symptoms." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012).

The ALJ's determination—that Plaintiff's subjective complaints are not entirely believable—is supported by substantial evidence and is free from legal error.

## III. Conclusion.

The court AFFIRMS the Commissioner's decision.

ENTERED this 1st day of September, 2017.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE